**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Alex Coelho, | No. CV-12-0328-TUC-BGM |
| Plaintiff, | |
| vs. | **ORDER** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Currently pending before the Court is Defendant' Motion to Remand (Doc. 19). A response has been filed, but no reply. Plaintiff brings this cause of action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). The United States Magistrate Judge has received the written consent of both parties, and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. The Court takes judicial notice that Michael J. Astrue is no longer Commissioner of the Social Security Administration ("SSA"). The Court will substitute the new Acting Commissioner of the SSA, Carolyn W. Colvin, as Defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.   BACKGROUND

### *A.   Procedural History*

On January 29, 2007, Plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB") alleging disability as of January 3, 2007 due to a myocardial

infarction, coronary artery disease, sleep apnea/upper airway resistance syndrome, depression, anxiety, high blood pressure, and gastrointestinal problems. *See* Administrative Record ("AR") at 12, 81, 148, 196, 219, 223, 257. The Social Security Administration ("SSA") denied this application on July 26, 2007. *Id.* at 81, 93. Plaintiff filed a request for reconsideration, and on January 25, 2008, SSA denied Plaintiff's request. *Id.* at 81, 101. On February 26, 2008, Plaintiff filed his request for hearing. *Id.* at 81, 104. On February 24, 2009, a hearing was held before Administrative Law Judge ("ALJ") Norman R. Buls. *Id.* at 81; Suppl. AR at 1-28. The ALJ issued an unfavorable decision on April 27, 2009. AR at 78-88. Plaintiff requested review of the ALJ's decision by the Appeals Council, review was granted, and on May 18, 2010, the Appeals Council remanded the case back to an ALJ. *Id.* at 89-92, 148-53. Upon remand, a supplemental hearing was held on October 26, 2010 before ALJ Norman R. Buls. *Id.* at 36-74. On January 5, 2011, ALJ Buls issued his Notice of Decision, denying Plaintiff benefits. *Id.* at 9-22. On February 2, 2011, Plaintiff requested appellate review, which was denied. *Id.* at 1-4, 190. Plaintiff filed this cause of action on April 30, 2012. Compl. (Doc. 1). In response to Plaintiff's Opening Brief (Doc. 16) filed on September 14, 2012, the Commissioner filed her Motion to Remand (Doc. 19).

### *B.     Factual History*

Plaintiff was fifty-three (53) years old at the time of the supplemental administrative hearing, and forty-nine (49) at the time of the alleged onset of his disability. AR at 39, 196. Plaintiff possesses a high school education and attended two years of college at the time of his alleged onset. *Id.* at 39. Prior to his alleged disability, Plaintiff worked for Raytheon Missile Systems for twenty-six (26) years. *Id.* at 68, 164, 210, 224, 234, 239.

At the supplemental administrative hearing, Plaintiff testified that prior to the termination of his employment with Raytheon, he was exhausted and unable to focus. AR at 45. Plaintiff further testified that he no longer has "a desire to be involved in things." *Id.* at 47. Plaintiff testified that on a typical day he will "get up about three in the afternoon[,]" and go to bed "[a]nywhere from ten to midnight." *Id.* at 47. During his waking hours,

1  Plaintiff testified that he watches television and may cook, wash dishes and make the bed.
2  *Id.* at 47-8. Plaintiff further testified that he "started to get into watercolor painting," but has
3  not painted in approximately a year. *Id.* at 48. Plaintiff also testified that he enjoys reading,
4  and used to garden, but currently does not have any other hobbies and does not exercise. AR
5  at 48-9. Plaintiff testified that he drinks approximately twenty (20) to thirty (30) beers per
6  week. *Id.* at 49.

7  Plaintiff testified that he had recently seen his cardiologist, and a change in the size
8  of his aorta was discovered. *Id.* at 50. Plaintiff further testified that he was expecting to have
9  a CT scan to determine how large his aorta had become, as well as for his stomach issues.
10 *Id.* at 50-1.

11 Regarding his previous employment at Raytheon Missile Systems, Plaintiff testified
12 that during his last year there he missed more work than was authorized, approximately thirty
13 (30) days. AR at 52. Plaintiff further testified that his job as a section manager at Raytheon
14 required him to lift up to fifty (50) pounds at least three (3) times per week. *Id.* at 53.
15 Plaintiff testified that his exhaustion goes beyond being tired, but that "it is a fuzziness with
16 how you see . . . things." *Id.* at 55. Plaintiff also testified that his sleep apnea contributes to
17 his exhaustion. *Id.* at 56.

18 Regarding his emotional issues, Plaintiff testified that he used to enjoy painting,
19 gardening and golf, but he no longer has any interest in these things. *Id.* at 57. Plaintiff
20 further testified that although he used to love to golf, he has stopped playing due to a lack of
21 motivation. AR at 51-2. Plaintiff testified that he participates in only two benefit golf
22 tournaments per year. *Id.* at 47. Plaintiff further testified that it is likely that he is depressed,
23 and that he currently takes the anti-depressant Celexa. *Id.* at 57-8. Plaintiff also testified that
24 he has problems with anxiety, and that this has been an issue since his heart attack. *Id.* at 58.
25 Plaintiff testified that these issues also affected his desire and ability to work. *Id.* at 59;
26 Suppl. AR at 7.

27 Ms. Tracy Young, a vocational expert, also testified at the administrative hearing. AR
28

at 61. Ms. Young testified that she would categorize Plaintiff's job at Raytheon as a machine shop supervisor, DOT number 600.130-010, a medium, very skilled position. *Id.* at 62. Ms. Young further testified that alternatively, she would categorize Plaintiff as a production planner, based on his previous work experience, which is a light, skilled position. *Id.* at 62. Ms. Young identified Plaintiff as having skills, including scheduling, planning, supervising, training, resolving problems, and mediation; however, she noted that his tenure with Raytheon and lack of a college degree may limit the transferability of those skills to a highly skilled position. *Id.* at 64. Accordingly, the ALJ asked Ms. Young, hypothetically, whether an individual of claimant's age, education and work background with physical limitations including occasionally lifting twenty (20) pounds, frequently lifting ten (10) pounds, stand and walk with normal breaks for a total of six hours in an eight hour work day, sit with normal breaks for a total of six hours in an eight hour work day, and without limitation of pushing and pulling other than per lifting and carrying, and no postural or manipulative limitations, no visual limitations, no communicative limitations, and the individual must avoid moderate exposure to hazards, such as machinery and heights, and mentally has moderate limitations in the ability to make judgements on complex work-related decisions and to respond appropriately to usual work situations and to changes in a routine work setting, would be able to perform any past relevant work of Plaintiff. *Id.* at 64-5. Ms. Young opined that the physical limitations would preclude him from performing the medium job of machine shop supervisor. AR at 65.

Plaintiff's counsel questioned Ms. Young regarding his treating physician, Dr. Talalaev's opinion, that Plaintiff:

> can work four hours a day, four days per week. That he could stand for 20 minutes and sit for 40 minutes. That the standing would be up to 1.3 hours out of a day; sitting would be 3.7 total hours in a day; could walk for 20 minutes. He would need to change positions frequently. That he would probably miss three work days per month as a result of disability. He could ride in a vehicle one hour at a time, 2 total hours in a day. Could occasionally, bend, crouch, kneel, and squat. Could frequently sit in a clerical position; occasionally reach above shoulder level and occasionally work with arms extended in front.

- 4 -

1  *Id.* at 66. Based on these physical restrictions, Ms. Young agreed that Plaintiff could not do
2  any form of his past work. *Id.* She further agreed that there would be no other jobs existing
3  in reasonable numbers in the national economy that Plaintiff could perform. *Id.* at 67.
4  Plaintiff's counsel also asked Ms. Young a hypothetical regarding Plaintiff's mental
5  limitations as reported by examining psychiatrist Dr. Rohen, diagnosing a major depressive
6  disorder, and moderate limitations in Plaintiff's ability to complete a normal work day or
7  week, to perform at a consistent pace without an unreasonable number and length of rest
8  periods, to perform activities with a schedule, maintain regular attendance, and be punctual
9  within customary tolerances, coupled with his ability to occasionally lift twenty-five (25)
10 pounds and frequently ten (10) pounds. *Id.* at 67. Based upon this information, Ms. Young
11 opined that the combination would preclude Plaintiff from doing the kind of work he had
12 previously done and preclude him from any other kind of work that exists in reasonable
13 numbers in the national economy. AR at 67-8.

14     Pursuant to request by the Arizona Department of Economic Security ("AZDES"),
15 Plaintiff was examined by Dennis Thrasher, M.D. *Id.* at 590-600. Plaintiff saw Dr. Thrasher
16 on August 9, 2010. *Id.* at 590. Dr. Thrasher reviewed Plaintiff's medical records,
17 interviewed him and performed a physical examination. *Id.* at 590-600. Dr. Thrasher's
18 assessment indicated a history of coronary artery disease, with current complaints of
19 excessive fatigue, obstructive sleep apnea, Barrett's esophagitis and chronic dyspepsia, and
20 depression and anxiety. *Id.* at 592. Dr. Thrasher found that Plaintiff could lift and carry up
21 to ten (10) pounds continuously, up to twenty (20) pounds frequently and up to fifty (50)
22 pounds occasionally. AR at 594. In an eight (8) hour work day, Dr. Thrasher found that
23 Plaintiff could sit for six (6) hours, stand for two (2) hours and walk for one (1) hour. *Id.* at
24 595. Dr. Thrasher also found some limitation in Plaintiff's ability in reaching and pushing
25 or pulling. *Id.* at 596. Dr. Thrasher further found that Plaintiff could frequently stoop,
26 occasionally climb stairs and ramps, balance, kneel, crouch and crawl, and never climb
27 ladders or scaffolds. *Id.* at 597. Dr. Thrasher additionally found that Plaintiff could

1  frequently tolerate moving mechanical parts; occasionally tolerate operating a motor vehicle,
2  humidity and wetness, and vibrations; and never tolerate unprotected heights, dust, odors,
3  fumes, and pulmonary irritants or extreme cold or heat.  AR at 598.

4        Plaintiff's records were reviewed by state agency physician Michael Maximov, M.D.
5  *Id.* at 381.  Dr. Maximov determined that Plaintiff could occasionally lift and/or carry up to
6  twenty (20) pounds, frequently lift and/or carry up to ten (10) pounds, stand and/or walk
7  (with normal breaks) for a total of about six (6) hours in an eight (8) hour work day and sit
8  (with normal breaks) for a total of about six (6) hours in an eight (8) hour work day.  *Id.* at
9  381.  Dr. Maximov limited Plaintiff's ability to push and/or pull only to the degree that he
10 was limited in carrying or lifting.  *Id.*  Dr. Maximov did not find any postural, manipulative,
11 visual or communicative limitations for Plaintiff.  *Id.* at 382-4.  Dr. Maximov determined
12 Plaintiff should avoid concentrated exposure to extreme heat and extreme cold and should
13 avoid even moderate exposure to hazards such as machinery and heights.  AR at 384.  Dr.
14 Maximov stated that Plaintiff's "fatigue appears more likely related to depression, untreated
15 sleep apnea, deconditioning, alcoholism or excessive sleep rather than to CAD, Barrett's
16 esophagus, or hyperlipidemia."  *Id.* at 385.  Pursuant to request by the Commissioner, Jerry
17 L. Dodson, M.D., reviewed the records in this case.  *Id.* at 116.  Dr. Campbell affirmed the
18 Residual Functional Capacity assessment of Dr. Maximov.  *Id.*

19       Pursuant to request by AZDES, Plaintiff was referred for evaluation by Noelle Rohen,
20 Ph.D. and examined on July 2, 2007.  *Id.* at 388.  Dr. Rohen reviewed Plaintiff's medical
21 records provided by Disability Determination Services, performed a clinical interview and
22 mini-mental state examination.  *Id.* at 388.  Dr. Rohen diagnosed Plaintiff with major
23 depressive disorder and anxiety disorder, not otherwise specified.  *Id.* at 390-91.  She
24 deferred to Plaintiff's medical records regarding physical diagnoses.  *Id.*  Dr. Rohen noted
25 that Plaintiff's "[d]epression has been chronic despite treatment and is likely to persist unless
26 treatment is adjusted, and can be expected to impact him in the workplace via its contribution
27 to attendance problems and slowed performance."  AR at 390-91.

28

1      On July 25, 2007 Plaintiff was examined by Andres Kerns, Ph.D.[1] *Id.* at 397-414.
2  Dr. Kerns performed a Mental Residual Functional Capacity Assessment and determined that
3  Plaintiff was moderately limited in his ability to perform activities within a schedule,
4  maintain regular attendance and be punctual within customary tolerances, as well as his
5  ability to complete a normal workday and workweek without interruptions from
6  psychologically based symptoms and to perform at a consistence pace without an
7  unreasonable number and length of rest periods. *Id.* at 397-98. Dr. Kerns diagnosed Plaintiff
8  with a depressive disorder and anxiety disorder, not otherwise specified. *Id.* at 404, 406. Dr.
9  Kerns found Plaintiff to be moderately limited in his ability to maintain concentration,
10 persistence, or pace. *Id.* at 411. Pursuant to request by the Commissioner, Eugene Campbell,
11 Ph.D. reviewed the records in this case. AR at 415. Dr. Campbell affirmed Dr. Kerns's
12 Psychiatric Review Technique Form ("PRTF") and Mental Residual Functional Capacity
13 ("MRFC") form decision. *Id.*
14     Plaintiff was also examined by Kathleen V. Prouty, Ph.D. on July 30, 2010.[2] *Id.* at
15 585-89.  Dr. Prouty reviewed Plaintiff's medical records provided by Disability
16 Determination Services, performed a clinical interview and mini-mental state examination.
17 *Id.* at 585. Dr. Prouty determined that Plaintiff's basic cognitive and memory function is
18 grossly intact. *Id.* at 586. Regarding Plaintiff's alcohol consumption, Dr. Prouty stated this
19 "can contribute to changes in his moods and behaviors." AR at 586. Moreover, she stated
20 that Plaintiff "has limited insight into his alcohol use and its effects on his physical and
21 mental well-being." *Id.* The ALJ relied on Dr. Prouty's finding in his decision. *Id.* at 16.
22     Plaintiff's treating physician, Yuri Talalaev, M.D., determined that Plaintiff could

---

[1] It appears that Dr. Kerns examined Plaintiff at the request of the Commissioner; however, his report does not state so explicitly. It is also unclear whether Dr. Kerns performed an in-person examination or a records review.

[2] It appears that Dr. Prouty's examination took place at the request of the Commissioner; however, her report does not state so explicitly.

- 7 -

1  perform sedentary work part-time, for four (4) hours of an eight (8) hour day, but could not
2  perform any form of light, medium or heavy work. *Id.* at 629.  Dr. Talalaev further
3  determined that during the work day, Plaintiff could stand for twenty (20) minutes at a time
4  for a total of 1.3 total hours and sit for forty (40) minutes at a time for 3.7 total hours. *Id.*
5  Dr. Talalaev also stated that frequent position changes would be necessary. AR at 629.
6  Furthermore, Dr. Talalaev found Plaintiff could not climb either ladders or stairs, and would
7  be expected to miss an average of three (3) workdays per month as a result of his disability
8  and normal illness. *Id.* Dr. Talalaev stated that Plaintiff could sit in a clerical position
9  frequently, and occasionally bend, crouch, kneel, squat, reach above shoulder level and work
10 with arms extended in front. *Id.* at 630. Regarding Plaintiff's use of his hands and arms, Dr.
11 Talalaev limited Plaintiff to occasional power gripping, pushing and pulling; pinching with
12 thumb and index finger; fine movements, typing/small assembly; and feel/touch where
13 sensation is required. *Id.* Finally, Dr. Talalaev found Plaintiff to require limitations in his
14 environment regarding extremes of heat and cold; sudden temperature or humidity changes;
15 exhaust fumes, smoke or dust; and strong odors such as cleaning compounds or perfumes.
16 *Id.*

17        Plaintiff's treating physician, Lou Lancero, M.D., found Plaintiff could perform light
18 work, but that Plaintiff would require changing positions at least once per hour. AR at 625.
19 Dr. Lancero further stated that Plaintiff could stand or walk during a work day only as
20 tolerated. *Id.* Dr. Lancero stated that Plaintiff could frequently sit in a clerical position and
21 work with his arms extended in front, and occasionally bend, crouch, kneel, squat, and reach
22 above shoulder level. *Id.* at 626. Dr. Lancero limited Plaintiff to occasional power gripping,
23 pushing and pulling, and frequent pinching with the thumb and index finger, fine movements,
24 typing/small assembly, and feel/touch where sensation was required. *Id.*

26 **II.    STANDARD OF REVIEW**
27        The factual findings of the Commissioner shall be conclusive so long as they are

- 8 -

based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance." *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098. Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Moreover, the court may not focus on an isolated piece of supporting evidence, rather it must consider the entirety of the record weighing both evidence that supports as well as that which detracts from the Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations omitted).

**III.   ANALYSIS**

The Commissioner follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). This process is defined as follows: Step one asks is the claimant "doing substantial gainful activity[?]" If yes, the claimant is not disabled; step two considers if the claimant has a "severe medically determinable physical or mental impairment[.]" If not, the claimant is not disabled; step three determines whether the claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. If not, the claimant is not disabled; step four considers the claimant's residual functional capacity and past relevant work. If claimant can still do past relevant work, then he or she is not disabled; step five assesses the claimant's residual

- 9 -

1 functional capacity, age, education, and work experience. If it is determined that the
2 claimant can make an adjustment to other work, then he or she is not disabled. 20 C.F.R. §
3 404.1520(a)(4)(i)-(v).

4       In the instant case, the ALJ found that Plaintiff was not engaged in substantial gainful
5 activity since January 3, 2007. AR at 14. At step two of the sequential evaluation, the ALJ
6 found that "[t]he claimant has the following severe impairments: status post myocardial
7 infarction; depression; substance abuse (alcohol) (20 CFR 404.1520(c))." *Id.* at 15. At step
8 three, the ALJ found that Plaintiff "does not have an impairment or combination of
9 impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404,
10 Subpart P, Appendix 1 (20 CFR 404.1520(d))." *Id.* at 15. At step four, while including
11 Plaintiff's substance abuse, the ALJ found that Plaintiff "is unable to perform past relevant
12 work." *Id.* at 17. The ALJ also analyzed step four if Plaintiff stopped the substance use,
13 finding that Plaintiff "would have the residual functional capacity to perform the full range
14 of light work as defined in 20 CFR 404.1567(b)." *Id.* at 19. The ALJ specifically found that
15 Plaintiff "can occasionally lift 20 pounds and frequently lift 10 pounds; stand and walk with
16 normal breaks for six hours in an eight hour workday; sit for six hours in an eight hour
17 workday with normal breaks; he has no limitations in pushing/pulling except for as in lifting
18 and carrying; no postural, manipulative, visual, communicative limitations; must avoid
19 concentrated exposure to temperature extremes (heat and cold); . . . and he should avoid
20 moderate exposure to work hazards such as moving machinery and unprotected heights."
21 AR at 19. The ALJ also found that "[a]bsent alcohol abuse, the claimant has no
22 psychological limitations." *Id.* At step five, including substance abuse in his analysis, the
23 ALJ determined that Plaintiff "is unable to perform any kind of work so long as substance
24 abuse is a factor. Thus, a finding of 'disabled' is appropriate under the framework of the
25 above-cited rule." *Id.* at 18. The ALJ further found that "[i]f the claimant stopped the
26 substance use, the claimant would be able to perform past relevant work as a production
27 planner. This work does not require the performance of work-related activities precluded by
28

the residual functional capacity the claimant would have if he stopped the substance use (20 CFR 4094.1565)." *Id.* at 21. Ultimately, the ALJ determined that "[b]ecause the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(f)), the claimant's substance use disorder is a contributing factor material to the determination of disability (20 CFR 404.1535). Thus, the claimant has not been disabled within the meaning of the Social Security Act[.]" *Id.* at 22. Plaintiff asserts that the ALJ erred in 1) failing to evaluate treating internist Dr. Talalaev's October 2010 opinions; 2) failing to evaluate treating cardiologist Dr. Lancero's October 2010 opinions; 3) erroneously evaluating examining physician Dr. Thrasher's opinions; and 4) his step four analysis. Pl.'s Opening Brief (Doc. 16) at 8-18. The Commissioner acknowledges the first three errors delineated by Plaintiff. Def.'s Memorandum in Supp. of Def.'s Mot. to Remand (Doc. 20) at 3.

### *A.  Treating Physician Opinions*

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted)). "The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *See also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Moreover, "[e]ven if a treating physician's

opinion is controverted, the ALJ must provide specific, legitimate reasons for rejecting it." *Id.* (citing *Cotton*, 799 F.2d at 1408).

Here, the ALJ failed to meet this burden. It is undisputed that the ALJ failed to set forth "specific and legitimate" reasons supported by "substantial evidence in the record" as required by the Ninth Circuit. *See, e.g., Rollins*, 261 F.3d at 856.

### B. Determination of Benefits

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989) (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart,* 379 F.3d 587, 593, (9th Cir. 2004) (*citing Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000)). Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke,* 379 F.3d at 593 (citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings. . . . Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id.* (citations omitted); *see also Lester*, 81 F.3d at 834.[3] Further, "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989); *see also Pitzer* [*v. Sullivan*], 908 F.2d[ 502,] 506 [(9th Cir. 1990)] (remanding for payment of benefits where Secretary did not provide adequate reasons for disregarding examining physician's opinion)."

---

[3]In light of this Court's conclusion regarding Plaintiff's physical limitations, it need not address the ALJ's findings regarding substance abuse, as this issue is not material to the disability determination.

- 12 -

1 *Lester*, 81 F.3d at 834.

2 Here, the ALJ neither indicated that the opinions of Plaintiff's treating physicians Drs. Talalaev and Lancero were controverted nor provided clear and convincing reasons for rejecting them. *See Lester*, 81 F.3d at 830-31; AR at 19. Moreover, a treating physician's opinion is "entitled to special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The record before the Court is fully developed. Based upon the physical restrictions determined by Dr. Talalaev, the vocational expert agreed that Plaintiff could not do any form of his past work, and agreed that there would be no other jobs existing in reasonable numbers in the national economy that Plaintiff could perform. *Id.* at 66-67. Properly crediting the opinion of Dr. Talalaev, the ALJ would be required to find Plaintiff is disabled. *See Lester*, 81 F.3d at 834. As such, there are no outstanding issues that must be resolved before a determination of disability can be made. Accordingly, the final decision of the Commissioner denying Plaintiff's application for benefits is reversed and remanded for an award of benefits.

## IV.   CONCLUSION

In light of the foregoing, the Court reverses the Commissioner's decision and remands for an award of benefits.

Accordingly, IT IS HEREBY ORDERED that:

1) Carolyn W. Colvin, Acting Commissioner of Social Security, is **substituted as Respondent** for Michael Astrue pursuant to Rule 25(d) of the Federal Rules of Civil Procedure;

2) Plaintiff's Opening Brief (Doc. 16) is GRANTED;

3) The Commissioner's Motion for Remand (Doc. 19) is GRANTED in part and DENIED in part;

4) The Commissioner's decision is REVERSED and REMANDED for calculation

and award of benefits. 42 U.S.C. § 405(g); and

    5)    The Clerk of the Court shall enter judgment, and close its file in this matter.

DATED this 11th day of September, 2013.

                                          Bruce G. Macdonald
                                      United States Magistrate Judge

- 14 -